## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated, c/o Ivey & Levetown, LLP 6411 Ivy Lane, Suite 304, Greenbelt, Maryland 20770 | No. |
| Plaintiff, | <u>JURY TRIAL DEMANDED</u> |
| v. | |
| GEORGETOWN UNIVERSITY, 300 O Street NW, Washington, D.C. 20057, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

## TABLE OF CONTENTS

**Page**

I.    NATURE OF ACTION ...................................................................................1

II.   JURISDICTION AND VENUE .......................................................................2

III.  PARTIES .......................................................................................................3

IV.   FACTS ...........................................................................................................5

      A.    Background ...........................................................................................5

      B.    The Novel Coronavirus Shutdowns And Defendant's Campus Closure ................9

      C.    Defendant's Refusal To Issue Tuition and Fee Refunds .......................................14

V.    CLASS ACTION ALLEGATIONS ...............................................................14

VI.   CAUSES OF ACTION ..................................................................................18

      COUNT I BREACH OF CONTRACT...........................................................18

      COUNT II UNJUST ENRICHMENT ...........................................................19

      COUNT III CONVERSION ...........................................................................20

PRAYER FOR RELIEF ..........................................................................................21

JURY DEMAND ....................................................................................................21

Plaintiff, JOHN DOE, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendant GEORGETOWN UNIVERSITY ("Georgetown"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.    NATURE OF ACTION

1.    This Class Action Complaint comes during a time of hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, shelter-in-place orders, and efforts to 'flatten the curve' prompted colleges and universities across the country to shut down their campuses, evict students from campus residence halls, and switch to online "distance" learning.

2.    Despite sending students home and closing its campus(es), Defendant continues to charge for tuition, fees, and/or graduate room and board as if nothing has changed, continuing to reap the financial benefit of millions of dollars from students. Defendant does so despite students' complete inability to continue school as normal, occupy campus buildings and dormitories, or avail themselves of school programs and events. So while students enrolled and paid Defendant for a comprehensive academic experience, Defendant instead offers Plaintiff and the Class Members something far less: a limited online experience presented by Google or Zoom, void of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such an experience.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. To minimize the burden on the Court and to reasonably accommodate Defendant, Plaintiff will work with Defendant to reach an agreeable schedule for their response to this Class Action Complaint.

-1-

3.      While some colleges and universities have promised appropriate and/or proportional refunds, Defendant excludes itself from such other institutions treating students fairly, equitably, and as required by the law. And for some students and families, Defendant does so based on outdated financial aid equations and collections, without taking into account disruptions to family income, a particular concern now where layoffs and furloughs are at record levels.

4.      As a result, Defendant's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full-value of the services paid, did not receive the benefits of in-person instruction. They have lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

## II.      JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Maryland, whereas Defendant is a citizen of the District of Columbia for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members

of the proposed Class in the aggregate are citizens of a state other than the District of Columbia,[2] where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

6.      Venue is appropriate in this District because Defendant is located within the District of Columbia. And on information and belief, events and transactions causing the claims herein, including Defendant's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.      PARTIES

7.      Plaintiff John Doe is a citizen and resident of the State of Maryland. Plaintiff is enrolled as an MBA graduate student in Defendant's McDonough School of Business for Defendant's Spring 2020 academic term.

8.      Plaintiff is in good financial standing at Defendant, having paid in whole or in combination tuition, fees, and costs assessed and demanded by Defendant for the Spring 2020 term.

9.      Plaintiff paid Defendant for opportunities and services that he will not receive, including on-campus education, facilities, services, and activities.

10.      While Plaintiff could have obtained his degree on-line, Plaintiff specifically selected an in-person, in-class experience for the variety of educational experiences and benefits that only an in-person program can deliver. Moreover, unlike many other MBA programs, the specific program that Plaintiff selected and enrolled at Defendant does not offer an online component.

---

[2] Less than 10% of the students attending Georgetown University come from within District of Columbia. https://www.collegefactual.com/colleges/georgetown-university/student-life/diversity/.

11.     With Georgetown's campus closure and transition to an online-only educational experience, Plaintiff has suffered a decreased quality of experience, education, and lost access to important university facilities and experiences, all of which he bargained for by selecting in-person experience.

12.     For example, a key, pre-pandemic component to Plaintiff's educational experience involved the direct, in-class interaction and discussions among professors and classmates, with classmates bringing individual experiences to help understand materials and business case learning. But post-pandemic such discussions no longer occur. Rather, coursework is driven by PowerPoint presentation, with little opportunity or bandwidth for individual discussion.

13.     On top of the change in class format, professors cover less material, with one of Plaintiff's professors indicating to the class 20% of the planned course materials have been eliminated because the professor no longer has time to cover such material through an online-only format.

14.     Moreover, group projects, another important hallmark program component, has changed detrimentally as well. Such collaborative, discussion-based interactive projects are now limited to occasional Zoom calls for the limited purpose of dividing work and deliverables among "teammates." So with the shift to online-only instruction, groups no longer white board ideas, collaborate as a team, share experiences, or provide constructive criticism to each other.

15.     And whereas class visitors and practitioners routinely guest lectured on relevant course topics, which also provided students with the opportunity to directly engage with high-level executives, Defendant eliminated all such presentations.

16.     Defendant also eliminated an overseas travel component of its planned curriculum. As part of Defendant's scheduled curriculum students planned to travel overseas to help a company solve a problem set, with the university paying for all expenses except student-airfare. But because of COVID-19, Defendant cancelled that in-person experience, without providing any tuition adjustments or other expenses, even though students are no longer travelling for the experience. Shifting that educational experience online provides no substitute.

17.     Defendant's transition to online-only classes has also been riddled with technical difficulties, including trouble with delivery of online materials.

18.     Plaintiff also lacks access to university facilities, including opportunities to hear on campus speakers or participate in career placement services.

19.     Defendant Georgetown University is an institution of higher learning located at 3700 O Street, NW, Washington, D.C. among other locations in the District of Columbia. Defendant provides Class Members with campus facilities, in-person classes, as well as a variety of other facilities for which Defendant charges Plaintiff and the Class Members.

## IV.     FACTS

### A.     Background

20.     Founded in 1789, Georgetown has a current enrollment of approximately 5,365 students. Georgetown is the nation's oldest Catholic and Jesuit University. Georgetown is a major international research university, which includes four undergraduate schools; a school for continuing studies; graduate schools in the arts and sciences, nursing and health studies, business, foreign service, and public policy; and professional schools in law and medicine.

21.     As of FY2019, Georgetown's endowment totaled approximately $1.8 billion, with total assets exceeding $3.58 billion. Georgetown reported $1.314 billion in operating revenues, which includes income of $648.2 million in net tuition and fees—an increase of $27.6 million

from the prior fiscal year—along with $14.59 million in student fees, $12.44 million from athletic and alumni events, among other income sources.

22.     On or about June 30, 2016, Georgetown reported "the successful conclusion of the university's 10-year campaign *For Generations to Come*. The campaign exceeded its goal of $1.5 billion, raising $1.67 billion . . . making this decade-long effort the most successful in Georgetown's history."[3]

23.     While many schools nationwide offer and highlight remote learning capabilities as a primary component of their efforts to deliver educational value (*see, e.g.*, Western Governors University, Southern New Hampshire University, University of Phoenix-Arizona), Defendant is not such a school.

24.     Rather, a significant focus of Defendant's efforts to obtain and recruit students pertains to the campus experience it offers along with face-to-face, personal interaction with skilled and renowned faculty and staff.

25.     A few examples of such efforts to promote that experience follow.

26.     Georgetown promotes its academic experience as more than just sitting in a classroom and listening to a lecture: "We live at the intersection of teaching and doing, where learning is more than the transmission of knowledge, it is an act of collaboration and practice. Under the mentorship of our distinguished faculty, you'll go beyond the information to not just learn about your field, but also to learn your field's way of thinking. Through lectures, small group projects, independent studies, office hours, internships and more, you'll leave Georgetown with the intellectual skills of perception, analysis, interpretation and expression."[4]

---

[3] https://giving.georgetown.edu/giving-news/generations-campaign-breaks-fundraising-records.

[4] https://www.georgetown.edu/academics/.

27.     To accomplish such personal interactions and collaboration, Georgetown maintains an 11:1 student-to-professor ratio, which "encourages open dialogue and inquiry."[5]

28.     Defendant also touts opportunities for collaboration and personal interaction in describing its individual programs. For example, as Defendant highlights its executive MBA program: "Individual faculty members deliver course content using different approaches, including case studies, lectures, experiential learning, simulations, and group projects. Teamwork is emphasized throughout the program. It creates a rich learning environment in which students are exposed to various industry perspectives and learn from their classmates' experiences."[6] Notably, Georgetown specifically notes in FAQs about this program that none of its Executive MBA courses "are completed online."[7]

29.     And as another example, for its Walsh School of Foreign Service, students "will not only take top-notch classes from scholars and practitioners, but have unparalleled access to esteemed speakers, competitive internships in the public and private sectors, and world-influencing events, conferences, and meetings."[8] Thus, "[s]tudying at Georgetown means engaging directly with international leaders inside and outside of the classroom."[9]

30.     Georgetown also provides students with 14 Living Learning Communities, "residential communities where students are able to share and deepen their passions through social, educational, and reflective activities. These communities support Georgetown University's focus on active and collaborative learning by extending discussions beyond the

---

[5] *Id.*

[6] https://msb.georgetown.edu/faq-2/#.

[7] *Id.*

[8] https://sfs.georgetown.edu/life/.

[9] *Id.*

classroom, creating new opportunities for students and faculty to interact, and promoting the value of experiences which occur in residential spaces."[10]

31.     Further, Georgetown maintains top facilities for students. Opened in 2014, the Healey Family Student Center is Georgetown's newest center of student life on campus, containing a tavern, an outdoor grill and patio area, dance studios, and ample study spaces. Likewise, the Yates Field House serves a hub of student fitness on campus. And the Rafik B. Hariri building houses Defendant's graduate and undergraduate business programs, including community space, high-tech case study and lecture rooms, along with "impressive extracurricular functions such as Startup Hoyas, stock pitches, case study competitions, and guest lecturers."[11]

32.     To obtain such educational opportunities and activities, Plaintiff and the Class Members pay, in whole or in part, significant tuition, fees, and/or room and board.

33.     For the Spring 2020 term, Defendant assessed students tuition and fees depending on their course of study. For example, for undergraduates, Defendant assessed students $27,720 for full-time tuition ($2,310 per credit hour), an $84 student activity fee, on-campus housing fees ranging from $4,938 to $6,615, and board ranging from $438 to $3,407.

34.     As another example, Defendant assessed graduate students in its Executive MBA program $30,784 for tuition for 13 credit hours ($2,368 per credit hour), along with a $17 graduate student activities fee.

---

[10]
https://residentialliving.georgetown.edu/leadership/llc/#_ga=2.133664653.288883348.15899862
59-1494110873.1589986259.

[11] https://georgetown.app.box.com/s/k16rcyz8nibr5iecgluqme1w9wcd5503.

35.     Such charges for study are significantly higher than online-only programs, including the limited online programs that Defendant offers.

36.     Schools delivering an online-only educational experience assess significantly discounted rates for delivering such educational services. For example, Western Governor's University charges a flat-rate tuition at $3,370 per term while Southern New Hampshire University charges $960 per course for online undergraduate programs and $1,881 per course for online graduate programs.

37.     As to Defendant, for the Spring 2020 term, Defendant also charged students less per credit hour for online courses for asynchronous online master's degree programs offered through its School of Continuing Studies, charging students $1,441 per credit hour.

38.     Defendant charges significantly less for such online programs notwithstanding its declaration that "[o]ur online courses provide the same academic content as the on-campus courses, award the same number of credits, meet the same learning objectives, and feature many of the same faculty members."[12]

**B.     The Novel Coronavirus Shutdowns and Defendant's Campus Closure**

39.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19.

40.     By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

---

[12] https://scsonline.georgetown.edu/online-experience?cmgfrm=https%3A%2F%2Fwww.google.com%2F.

41.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

42.     By March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

43.     Travel and assembly restrictions began domestically in the United States on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of April 6, 2020, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged or directed to stay home.

44.     As it relates to this suit, Georgetown began implementing COVID-19 related policies on January 24, 2020 when it issued a statement warning students and faculty against traveling to Wuhan, China.[13]

45.     Thereafter, on January 28, 2020, Georgetown began the first of many cancellations, announcing a suspension of all university-sponsored or related travel to China.[14]

46.     Georgetown followed that initial suspension with cancellations of a variety of other university sponsored travel, including: spring break trips to Cambodia on February 18, 2020 cancellation of travel to South Korea on February 25, 2020, and cancellation of its Italy study abroad program on February 25, 2020 as well, with more cancellations to follow.[15]

---

[13] https://thehoya.com/timeline-covid-19-developments-and-impacts-on-the-georgetown-community/.

[14] *Id*.

[15] *Id*.

47.     On or about March 10, 2020, Georgetown decided to effectively close its campus migrating all, or substantially all, classes online through April 5, 2020.[16]

48.     Thereafter, Georgetown extended online classes through the end of the semester per a March 13, 2020 announcement.[17]

49.     That same day, Georgetown also directed students to move out of campus residences, requiring students to move their belongings out by March 29, 2020, which it later accelerated to March 22, 2020.[18]

50.     Though the reasons for such closures are justified, the fact remains that such closures and cancellations present significant loss to Plaintiff and the Class Members.

51.     College students across the country have offered apt descriptions of the loss they have experienced as a result of the pandemic, highlighting the disparity between students' bargained for educational experience and the experience that colleges and universities, including Defendant, now provide.

52.     For example, as reported in The Washington Post, one student "wonders why he and others . . . are not getting at least a partial tuition refund. Their education, as this school year ends in the shadow of a deadly pandemic, is nothing like the immersive academic and social experience students imagined when they enrolled. But tuition remains the same: $27,675 per semester . . . 'Our faculty are doing a good job of working with us,' said Patel, 22, who is from New Jersey. 'But at the end of the day, it's not the same as in-person learning . . . It shouldn't

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

just be a part of the business model where, no matter what happens, you have to pay the same amount. The cost needs to reflect some of the realities.'"[19]

53.      As another example, as reflected in a Change.org petition, with nearly 5,000 supporters, students at another major university highlight the loss experienced by students: "As a result of the COVID-19 global pandemic crisis, Governor Pritzker has declared a state of emergency in Illinois. In response, Northwestern University made the sensible decision to offer all Spring 2020 courses online for the start of the quarter and will likely extend this to the rest of the quarter as the situation worsens. While this is certainly the right call to ensure the health and safety of all students, Northwestern's tuition and fees do not accurately reflect the value lost by switching to online education for potentially an entire term. For the following reasons, we are seeking a partial refund of tuition and full refund of room and board for the Spring 2020 quarter. Since Northwestern is a top private university, the estimated annual cost of attendance of $78,654 goes towards a comprehensive academic experience that cannot be fully replicated online. Due to the COVID-19 crisis, students paying for the Northwestern experience will no longer have access to invaluable face-to-face interaction with faculty, resources necessary for specific programs, and access to facilities that enable learning."[20]

54.      Another university's student newspaper reflects another example: "At this time, most of the campus and dorms need not be rigorously maintained. No events will be held, nor speakers hosted. The world-class education that consists in having opportunities to work and

---

[19] https://www.washingtonpost.com/education/2020/04/16/college-students-are-rebelling-against-full-tuition-after-classes-move-online/.

[20] https://www.change.org/p/northwestern-university-tuition-fees-reduction-for-spring-2020.

interact with academics and peers (not to mention the vast numbers of innovators, creators,

doctors, organizers, and more that congregate on our campus) will no longer be provided."[21]

55.     Georgetown students have similarly requested refunds, as reflected in a

Change.org petition:

> On March 11th, 2020, President John DeGioia of Georgetown University announced announced [sic] that, in response to the COVID-19 pandemic, in-person lectures would be suspended indefinitely until further notice.
>
> While the spread of the 2019 novel coronavirus is ultimately out of the control of the university, it is completely unreasonable for the student body to pay the full cost of tuition and, if applicable, housing.
>
> Therefore, the students of Georgetown University hereby request the following:
>
> > 1.     University to **refund** all students the difference between the costs of in-person instruction and online instruction.
> >
> > 2.     **Refund** those students who paid the full cost of university housing for the spring 2020 term.
> >
> > 3.     Freeze all tuition and fees increases for FY2021 and FY2022.
>
> It is ultimately not the responsibility of Georgetown students, many of which are currently full-time students, to bear the cost of the impact of the coronavirus on academic resources. According to 2019 NACUBO study, Georgetown University ranks 61st in the nation with a reported Total Endowment value of $1,822,484B with an Endowment Value per FT Student at $112,298.
>
> Therefore, we believe Georgetown is financially qualified to endure this national emergency and urge you to do the right thing.
>
> Thank you.

---

[21] https://www.chicagomaroon.com/article/2020/3/19/uchicago-lower-tuition-spring-2020/.

Georgetown University Students[22]

**C.     Defendant's Refusal To Issue Tuition and Fee Refunds**

56.     Given Defendant's transition to online classes and COVID-19 concerns,

Defendant asked students to vacate student housing by March 22, 2020.

57.     While Defendant has agreed not to charge undergraduate students for room and

board following March 16, 2020, it has not offered any discounts for tuition or other fees to

students.

58.     Defendant has also refused to give a prorated refund for fees paid for student

services students cannot use because those services were curtailed, eliminated, or because the

student followed the university's instruction to leave the campus and return home.

## V.     CLASS ACTION ALLEGATIONS

59.     Plaintiff sues under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of

Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons enrolled at Defendant for the Spring 2020 term who
> paid Defendant, in whole or in part, tuition, fees, and/or room and
> board for in-person instruction and use of campus facilities, but
> were denied use of and/or access to in-person instruction and/or
> campus facilities by Defendant.

Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest,

and Defendant's legal representatives, predecessors, successors, assigns, and employees.[23]

Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to

---

[22] https://www.change.org/p/president-john-j-degioia-partial-refund-on-georgetown-university-tuition (emphasis in original).

[23] The exclusion of Defendant's employees is not intended to exclude students paying tuition while simultaneously working for Defendant.

modify or amend the Class definition including through the creation of sub-classes if necessary, as appropriate, during this litigation.

60.     The definition of the Class is unambiguous. Plaintiff is a member of the Class Plaintiff seeks to represent. Class Members can be notified of the class action through contact information and/or address lists maintained in the usual course of business by Defendant.

61.     Per Rule 23(a)(1), Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records. However, given the thousands of students enrolled at Defendant in a given year, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

62.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2).

63.     Consistent with Rule 23(a)(2), Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical legal violations are involved. Individual questions pale by comparison to the numerous common questions that predominate. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendant's campus closure and student evictions, its complete transition to online classes, and Defendant's refusal to fully refund tuition, fees, and/or room and board.

64.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members under Rule 23(a)(2) and Rule 23(b)(3). Some of the common legal and factual questions include:

      a.     Whether Defendant engaged in the conduct alleged;

      b.     Whether Defendant has a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members;

      c.     Whether Defendant breached identical contracts with Plaintiff and the Class Members;

      d.     Whether Defendant violated the common law of unjust enrichment;

      e.     Whether Defendant converted Plaintiff and the Class Members refunds and/or rights to refunds; and

      f.     The nature and extent of damages and other remedies to which the conduct of Defendant entitles the Class Members.

65.     The Class Members have been damaged by Defendant through its practice of denying refunds to Class Members.

66.     Plaintiff's claims are typical of the claims of the other Class Members under Rule 23(a)(3). Plaintiff is a student enrolled at Defendant in the Spring 2020 term. Like other Class Members, Plaintiff was instructed to not return to Defendant's campus, forced to take online classes, and has been completely or partially denied a refund for tuition and fees.

67.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class as required by Rule 23(a)(4). Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and

experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

68.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members under Rule 23(b)(3). The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

69.     In addition under Rule 23(b)(3)(A), individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

70.     Under Rule 23(b)(3)(C), it is desirable to concentrate the litigation of the claims of Plaintiff and the Class Members in this forum given that Defendant is located within this judicial district and discovery of relevant evidence will occur within this district.

71.     Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties per Rule 23(b)(3)(D).

010920-24/1270017 V1

## VI.    CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

72.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

73.    Plaintiff and the Class Members entered into identical, binding contracts with Defendant.

74.    Under their contracts with Defendant, Plaintiff and the members of the Class paid Defendant tuition, fees, and/or room and board charges for Defendant to provide in-person instruction, access to Defendant's facilities, and/or housing services.

75.    Plaintiff and the Class Members have fulfilled all expectations, having paid Defendant for all Spring 2020 term financial assessments.

76.    However, Defendant has breached such contracts, failed to provide those services and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Defendant. Defendant has moved all classes to online classes, has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities, and/or has evicted Plaintiff and the Class Members from campus housing. In doing so, Defendant has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Defendant.

77.    Plaintiff and the Class Members have been damaged as a direct and proximate result of Defendant's breach.

78.    Plaintiff and members of the Class are entitled to damages, including but not limited to tuition refunds, fee refunds, and/or room and board refunds.

## COUNT II

## UNJUST ENRICHMENT

79.     Plaintiff restates and re-alleges, and incorporates herein by reference, the

preceding paragraphs as if fully set forth herein.

80.     At all times relevant hereto, Plaintiff and the Class Members directly conferred

non-gratuitous benefits upon Defendant, *i.e.*, monetary payments for tuition, fees, and/or room

and board, so that Plaintiff and the Class Members could avail themselves of in-person

educational opportunities and utilize campus facilities, including campus dormitories.

81.     Defendant knowingly accepted the benefits conferred upon it by Plaintiff and the

Class Members.

82.     Defendant appreciated or knew of the non-gratuitous benefits conferred upon it by

Plaintiff and members of the Class.

83.     Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff

and members of the Class, with full knowledge and awareness that, because of Defendant's

unjust and inequitable actions, Plaintiff and members of the Class are entitled to refunds for

tuition, fees, and/or room and board.

84.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and

members of the Class under these circumstances made Defendant's retention of the non-

gratuitous benefits unjust and inequitable.

85.     Because Defendant's retention of the non-gratuitous benefits conferred by

Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class

are entitled to, and seek disgorgement and restitution of, the benefits unjustly retained, whether

in whole or in part, including through refunds for tuition, fees, and/or room and board.

## COUNT III

## CONVERSION

86.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

87.     Plaintiff and the other members of the Class have an undisputed right to receive educational services, activities, and access Defendant's facilities for the Spring 2020 term. Plaintiff and the Class Members obtained such rights by paying Defendant tuition, fees, and/or room and board and by otherwise remaining in good standing with Defendant.

88.     Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by effectively closing its campus to in-person education and switching to an online-only format, discontinuing paid-for services, and evicting students from campus housing. All the while, Defendant has unlawfully retained the monies Plaintiff and the Class Members paid Defendant as well as barred Plaintiff from Defendant's facilities.

89.     Defendant deprived Plaintiff and the other Class Members of the rights and benefits for which they paid Defendant tuition, fees, and/or room and board.

90.     Plaintiff and/or Class Members have requested and/or demanded that Defendant issue refunds.

91.     Defendant's interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they paid for rights, benefits, services, and/or facility access, but Defendant has deprived Plaintiff and members of the Class of their rights, benefits, services, and/or facility access.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendant including:

A.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.      Damages in the amount of unrefunded tuition, fees, and/or room and board;

C.      Actual damages and all such other relief as provided under the law;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendant from retaining refunds for tuition, fees, and/or room and board;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

010920-24/1270017 V1

Dated: May 21, 2020

Respectfully submitted,

By: */s/ Andrew S. Levetown*
Glenn Ivey (Bar No. 414331)
Andrew S. Levetown (Bar No. 422714)
IVEY & LEVETOWN, LLP
6411 Ivy Lane, Suite 304
Greenbelt, MD 20770
(703) 618-2264
ivey@iveylevetown.com
asl@iveylevetown.com

Steve W. Berman (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski (*Pro Hac Vice* Forthcoming)
Whitney K. Siehl (*Pro Hac Vice* Forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of*
*all others similarly situated*

010920-24/1270017 V1